**In the United States Court of Appeals**
**for the Third Circuit**

---

**No. 25-2592**

---

MICHAEL NAHAS, individually and as
Administrator of the ESTATE OF FAYE McCOY, Decedent,
and on behalf of the Estate's sole beneficiary, DSP, Jr., Ms. McCoy's minor child,
*Plaintiff/Appellant*,

v.
CITY OF PITTSBURGH, et al.
*Defendants/Appellees*.

---

ON APPEAL FROM THE ORDERS ENTERED IN THE USDC FOR THE WESTERN DISTRICT OF PENNSYLVANIA (2:24-CV-01252) ON AUGUST 5, 2025 AND AUGUST 27, 2025 BY THE HON. CHRISTY CHRISWELL WIEGAND

---

**BRIEF FOR APPELLEES, ZACHARIAH NORMAN, EMILY SHIELDS and MICHAEL SOKOLOWSKI**

---

**JESSE I. EXILUS**
Acting City Solicitor
Pa. I.D. No. 324073

BY: **Julie E. Koren**
Associate City Solicitor
Pa. I.D. No. 309642
City of Pittsburgh, Dept. of Law
414 Grant Street, Rm. 313
Pittsburgh, PA 15219
(412) 255-2032
julie.koren@pittsburghpa.gov

*Counsel for Appellees Norman, Shields & Sokolowski*

# TABLE OF CONTENTS

**TABLE OF CITATIONS** ........ i

**COUNTERSTATEMENT OF THE CASE** ........ 1

A. Factual Background ........ 1

B. Procedural Background ........ 3

**SUMMARY OF ARGUMENT** ........ 5

ARGUMENT ........ 8

A. THE DISTRICT COURT PROPERLY DISMISSED APPELLANT'S STATE-CREATED DANGER CLAIM ........ 8

(1) The harm ultimately caused was not foreseeable or fairly direct; ........ 11

(2) No state actor acted with a degree of culpability that shocks the conscience; ........ 14

(3) No relationship between the state and Ms. McCoy existed such that Ms. McCoy was a foreseeable victim of the Appellee-Officers acts, nor was she a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general. 18

(4) No state actor affirmatively used his authority in a way that created a danger to Ms. McCoy or that rendered Ms. McCoy more vulnerable to danger than had the state not acted at all. ........ 20

B. THE DISTRICT COURT GRANTED APPELLANT LEAVE TO AMEND. ........ 22

C. THE DISTRICT COURT'S QUALIFIED IMMUNITY ANALYSIS WAS CORRECT. ........ 24

(1) There was no Constitutional injury. ........ 24

(2) The District Court properly found that there was no violation of a clearly established right. ........ 25

**CONCLUSION** ........ 29

**COMBINED CERTIFICATES** ........ 1

# TABLE OF CITATIONS

**Cases**

*Albright v. Oliver*, 510 U.S. 266 (1994) ....................8
*Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136 (3d Cir. 2017) ....................26
*Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249 (3d Cir. 2010) ....................15
*Bowers v. DeVito*, 686 F.2d 616 (7th Cir.1982) ....................10
*Bright v. Westmoreland County*, 443 F.3d 276 (3d Cir. 2006) .................... 14, 15, 21, 28
*Brookens v. City of Philadelphia*, No. 22-1201, 2023 WL 4231712 (3d Cir. June 28, 2023) ....................21
*Cuvo on behalf of A.C. v. Pocono Mountain Sch. Dist.*, No. 22-1576, 2023 WL 4994527 (3d Cir. Aug. 4, 2023) ....................15
*D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364 (3d Cir.1992) ..19
*DeShaney v. Winnebago County Dep't of Social Svcs.*, 489 U.S. 189 (1989) .. 9, 19, 25
*F.D.I.C. v. Deglau*, 207 F.3d 153 (3d Cir. 2000) ....................24
*Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288 (10th Cir. 2025) ....................2
*Hall v. Ligonier Valley Police Dep't*, 2025 WL 563813 (W.D. Pa. Feb. 20, 2025) ....................25
*Harvey v. Plains Twp. Police Dept't*, 421 F.3d 185 (3d Cir. 2005) ....................8
*Henry v. City of Erie*, 728 F.3d 275 (3d Cir. 2013) ....................12
*Hildebrand v. Allegheny County*, 757 F.3d 99 (3d Cir. 2014) ....................8
*In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125 (3d Cir. 2016) ....................28
*Johnson v. City of Philadelphia*, 975 F.3d 394 (3d Cir. 2020) ....................24
*Jones v. Reynolds*, 438 F.3d 685 (6th Cir. 2006) ....................27
*Kisela v. Hughes*, 584 U.S. 100 (2018) ....................26
*Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996) .................... 16, 17, 21, 24
*Long v. Cnty. of Armstrong*, 679 F. App'x 221 (3d Cir. 2017) .................... 11, 19
*Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164 (3d Cir.), *as amended* (Mar. 21, 2016) ....................26
*Mears v. Connolly*, 24 F.4th 880 (3d Cir. 2022) ....................5, 9
*Miller v. City of Philadelphia*, 174 F.3d 368 (3d Cir. 1999) ....................15
*Morrow v. Balaski*, 719 F.3d 160 (3d Cir. 2013) ....................25
*Morse v. Lower Merion School Dist.*, 132 F.3d 902 (3d Cir.1997) ....................11
*Nahas v. City of Pittsburgh*, et al, No. 25-2592 (3rd Cir. 2025) ....................2

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ............................ 11, 14
*Reichle v. Howards*, 566 U.S. 658 (2012) ...............................................................26
*Ricketts v. Titusville Area Sch. Dist.*, No. 24-2569, 2025 WL 2388772 (3d Cir. Aug. 18, 2025) ...............................................................................................15
*Rivas v. City of Passaic*, 365 F.3d 181 (3d Cir. 2004) ............................................19
*Sanford v. Stiles*, 456 F.3d 298, 312 (3d Cir. 2006) ...............................................28
*Schieber v. City of Philadelphia*, 320 F.3d 409 (3d Cir. 2003)...............................15
*United States v. Joines*, 258 F.2d 471 (3d Cir. 1958)..............................................25
*Van Orden v. Borough of Woodstown New Jersey*, 703 F. App'x 153 (3d Cir. 2017) ................................................................................................... 11, 12
*Villanueva v. El Paso Cnty.*, 463 F. Supp. 3d 1202 (D. Colo. 2020) ......................27
*Wyatt v. Krzysiak*, 82 F. Supp. 2d 250 (D. Del. 1999) ............................................27
*Ye v. United States*, 484 F.3d 634 (3d Cir. 2007) ............................................ 10, 19
*Zaloga v. Borough of Moosic*, 841 F.3d 170 (3d Cir. 2016) ...................................26

**Rules**

Fed. R. Civ. Pro. 12(b)(6) .........................................................................................9

# COUNTERSTATEMENT OF THE CASE

## A. Factual Background

On the night of January 26, 2024, into the early morning of January 27, 2024, Ms. Faye McCoy ("Ms. McCoy") and Ms. Nakila Crawford-Creighton ("Ms. Crawford") were together and visited at least two bars where each consumed alcohol. JA34, ¶¶ 2, 29-35. "In the very early morning hours of January 27, 2024," Ms. Crawford, with Ms. McCoy as a passenger, "were driving across the West End Bridge in the City of Pittsburgh." *Id*. at ¶ 2-3. The women drove across the bridge and wrecked into a traffic barrier located in the middle of a nearby intersection. *Id*. at ¶4, 36.[1] After the wreck, Ms. Crawford and Ms. McCoy stayed with the inoperable vehicle in the intersection. While the inoperable car was stranded, an unknown




[1] Appellant's Complaint reads: "Ms. Crawford-Creighton, while driving across the bridge, made a wrong turn and hit a barrier at the end of the Bridge which made the vehicle inoperable." The barrier and bridge are demonstrated on Google maps as indicated above. The barrier is circled in red. The end of the West End Bridge is highlighted in yellow. JA34, ¶ 4.

witness or witnesses "contacted the City of Pittsburgh Police, who arrived shortly" after Ms. Crawford's wreck. JA34, at ¶5; JA38, ¶38.

Officers Norman, Shields, and Sokolowski ("Appellee-Officers") reported to the scene where the Appellee-Officers encountered both women and the inoperable vehicle. JA38, ¶¶39-43. The police suspected Ms. Crawford of driving while impaired and arrested Ms. Crawford "for impaired driving and the [inoperable] car was impounded[.]" JA 38, ¶¶40-42.[2] Ms. McCoy was detained momentarily while Ms. Crawford Creighton was arrested. JA39, ¶53; *See also the affidavit of probable cause establishing probable cause for Ms. Crawford's arrest* at JA 63-65. Ms. McCoy was released on foot. *Id*. at ¶ 6.[3] The Appellee-Officers left the scene. After the Officers left, Ms. McCoy left the intersection known as the "west end circle" and "proceeded [on foot] north across the West End Bridge." JA33, ¶12. While Ms. McCoy was on or near the opposite end of the bridge, she was struck by a car

[2] As of the date of this filing, Ms. Crawford's DUI prosecution is pending in the Allegheny County Court of Common Pleas. CpDocketSheet.

[3] Appellant argues that "[t]he district court's holding read[ ] the [C]omplaint too narrowly and ignore[d] the required inferences." Appellant Brief of Michael Nahas at 17, *Nahas v. City of Pittsburgh*, et al, No. 25-2592 (3rd Cir. 2025). However, Appellant "trashes this already generous threshold[ ]" by omitting the key fact that the officers attempted numerous times to give Ms. McCoy a ride after Ms. Crawford's arrest. *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1306 (10th Cir. 2025)(Tymkovich, Circuit Judge, dissenting.)(arguing that intentionally omitting key facts to defeat the pleading standard "exemplifies lackluster and deceptive pleading"). Nevertheless, this key fact did not weigh in the District Court's dismissal of the case.

operated by one or more individuals identified as "John/Jane Doe." JA39, ¶56. When she was hit, Ms. McCoy was pushed over the side of the bridge and Ms. McCoy tragically died "as a result of the fall." JA39, ¶56-57.

**B. Procedural Background**

Appellant filed his initial complaint on September 4, 2024, acting as the executor of Ms. McCoy's estate and to vindicate Ms. McCoy's alleged rights. JA33. In his Complaint, Appellant alleged § 1983 substantive due process claims against each Appellee-Officer in both their official and individual capacities. JA40-50. Appellant also alleged claims against John/Jane Doe, Arts Tavern, and the City of Pittsburgh. *Id*.[4] On July 18, 2025, District Court Judge Weigand issued an Opinion and Order regarding the Appellee-Officers' Motion to Dismiss. JA5.

The District Judge dismissed the three individual Capacity §1983 claims with prejudice because Appellant "failed to adequately plead the fourth element because the Officers did not affirmatively increase the risk of harm to Ms. McCoy." JA11. The District Court then found that the Officers were entitled, even at the pleading stage, to qualified immunity because there was no clearly established right based upon the officers failure to give Ms. McCoy a ride. JA16. The District Court permitted leave to amend the official capacity claims. JA17-18.

[4] The claims against all other parties, except John/Jane Doe are not at issue in this appeal.

Specifically, the District Court ordered that Appellant had until August 1, 2025, to amend the official capacity claims against the Appellee-Officers and that if there was no amendment by that date the claims would be converted into dismissals with prejudice. *Id*. Appellee did not amend on or before August 1, 2025, and has never since specifically petitioned to amend his Complaint. JA 19. Ten days after the dismissal was converted to a dismissal without prejudice, Appellant filed a Motion to Reconsider. JA30 (ECF No. 40)[5] The District Court dismissed Appellant's Motion to Reconsider because it did not comport with the legal reasons for such a motion. *Id*.

Notices of Appeal were filed on August 15, 2025, and September 17, 2025. JA1-JA4.

[5] Although the Amended Notice of Appeal indicates that this appeal includes review of the District Court's August 27, 2025, Order denying Appellant's Motion to Reconsider the issues related to this Order should be denied on appeal. JA3. The actual Motion to Reconsider and Appellee-Officers' Response are not included in the reproduced record. Instead, only the August 27, 2025, Order was included at JA 20-21. Additionally, Appellant's Opening Brief makes no legal arguments as to the propriety of the District Court's August 27, 2025, Order dismissing Appellant's Motion to Reconsider. Since Appellant "did not raise this issue in [his] opening brief on appeal[,]" Appellant has "therefore waived it." *F.D.I.C. v. Deglau*, 207 F.3d 153, 169 (3d Cir. 2000). As a result of this wavier, this Court should not review issues related to the District Court's August 27, 2025, Order on the Motion for Reconsideration.

## SUMMARY OF ARGUMENT

**The District Court properly dismissed Appellant's state-created danger claim because his Complaint failed to allege facts establishing a deprivation of a constitutional right under the Fourteenth Amendment.** JA10. The Constitution imposes no general duty on the state to protect individuals from harm caused by private actors. *Mears v. Connolly*, 24 F.4th 880, 883 (3d Cir. 2022)(internal citation omitted). There is a narrow exception to this rule, namely "state created danger" claims. However, state created danger claims apply only where a state actor, through affirmative conduct, places an individual in danger or renders them more vulnerable than if the state had not acted at all. *Id*. The Appellee-Officers in this case did not undertake affirmative actions that placed Ms. McCoy in danger or that rendered her more vulnerable than when the Appellee-Officers first encountered Ms. McCoy. The allegations in Appellant's Complaint amounted to, at most, negligence based on a failure to act, which does not raise to the level of conscious-shocking behavior required to make out a state created danger claim.

Here, the District Court correctly concluded that Appellant failed to plead the required elements of a state-created danger claim. JA10. The District Court found that Appellant failed to allege affirmative conduct by the Appellee-Officers that foreseeably and directly caused Ms. McCoy's harm. In this Response Brief, the Appellee-Officers argue that the District Court's decision was correct and that the

District Court could have granted their motion on any of the four elements of a state created danger claim.

The Appellant-Officers maintain that the alleged risks identified in the Complaint were not the cause of the specific harm suffered by Ms. McCoy which instead resulted from intervening acts of private third parties, including Ms. Crawford and John/Jane Doe. Additionally, the Appellee-Officers did not remove a caretaker or make assurances of protection when they arrested Ms. Crawford, nor did they place Ms. McCoy in a worse position than she occupied before police involvement. No special relationship existed between the Officers and Ms. McCoy, as she was not in custody in a manner that imposed an affirmative duty of protection, nor did the brief period of Ms. McCoy's custody alter the chain of events set in motion by Ms. Crawford. Finally, the Officers did not affirmatively use their authority to create or increase a danger to Ms. McCoy. At most, Appellant alleges a failure to act, which cannot sustain a state-created danger claim under controlling precedent. Because the Complaint fails on multiple independent elements of the state created danger doctrine, the District Court correctly dismissed the claim, and the appeal should be dismissed for these reasons and those set forth throughout this Brief.

**Appeal issues related to Appellant's leave to amend his Complaint should be dismissed because the District Court did grant leave to amend.** *See* July 18,

2025, Court Order at JA17-18. Bizarrely, Appellant leaves out of his Opening Brief the fact that the District Court granted leave to amend the official capacity claims by a particular deadline. Appellant also omits from his Brief that Appellant ignored the amendment deadline. *See* JA17-19; *see also* JA30-31 (docket entry ECF No. 46). Approximately ten days after the deadline for amendment, Appellant filed a Motion to Reconsider, but did not ask for leave to amend. JA20-21. Appellant's Motion to Reconsider was dismissed and Appellant has failed to make any legal arguments in his opening Brief regarding the legal reasoning by the District Court in its denial of the Motion to Reconsider, which should be considered a waiver of issues connected to the August 27, 2025 Order.

**The District Court properly ruled that the Appellee-Officers were entitled to qualified immunity as to the individual capacity claims.** JA14-17.The District Court properly found that there was no constitutional injury alleged and that there was no violation of a clearly established right, which are the two prongs of qualified immunity. *Id*.; *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). The District Court relied on the standard put forth in recent Third Circuit precedent, namely *Thomas v. City of Harrisburg*, 88 F.4th 275 (3d. Cir. 2023), and found that based on the face of the Complaint, that the Appellee-Officers were entitled to qualified immunity. The Appellee-Officers maintain that they are entitled to qualified immunity because there

was no clearly established right indicating that a failure to act was a violation of the law.

## ARGUMENT

### A. THE DISTRICT COURT PROPERLY DISMISSED APPELLANT'S STATE-CREATED DANGER CLAIM

The District Court did not err when it determined that Appellant failed to make out a "state created danger" claim pursuant to the Fourteenth Amendment. Appellant made section 1983 claims against each Officer-Appellee in their individual and official capacities.

"Rather than conferring any substantive rights, section 1983 'provides a method for vindicating federal rights elsewhere conferred.'" *Hildebrand v. Allegheny County*, 757 F.3d 99, 104 (3d Cir. 2014) (quoting *Albright v. Oliver*, 510 U.S. 266, 271(1994)). To sufficiently state a §1983 claim a plaintiff must state facts establishing two elements: first, that he was deprived of a constitutional right and, second, that the alleged deprivation was "committed by a person acting under a color of state law." *Harvey v. Plains Twp. Police Dept't*, 421 F.3d 185, 189 (3d Cir. 2005).

In this case, the parties agreed that the Appellee-Officers were acting under the color of state law. The District Court cited and followed the proper precedent for Fed. R. Civ. Pro. 12(b)(6) Motions and state created danger claims when the District Court found that the Appellant failed to show that Ms. McCoy was deprived of a constitutional right. The Court found that Appellant "failed to adequately plead the

fourth element [of a state created danger claim] because the Officers did not affirmatively increase the risk of harm to Ms. McCoy." JA11. The District Court did not err in its decisions on the Substantive Due Process claim because it relied on and distinguished the case from appropriate, controlling Third Circuit and Supreme Court precedent. As the Appellee-Officers argued to the District Court, Appellant failed to state multiple elements of a state created danger claim.

The Due Process Clause is construed as a "limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago County Dep't of Social Svcs.*, 489 U.S. 189, 195 (1989). In 1989 the Supreme Court made clear that the government has no 14th Amendment duty to protect individuals from harm inflicted by private actors. *DeShaney*, 489 U.S. at 196 ("[t]he Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing its power, or employing it as an instrument of oppression. . . Its purpose was to protect the people from the State, not to ensure that the State protected them from each other[ ]") (cleaned up). As the Third Circuit has stated, "[t]he government has no general legal duty to keep people safe. *Mears*, 24 F.4th at 883 (quoting *DeShaney*, 489 U.S. at 195–96.)

The exception to this rule, the "state created danger" exception, applies "when the state, through some affirmative conduct, places the individual in a position of danger." *Id.* Claims under a State Created Danger theory ask whether the actions of

the state actor were akin to throwing a person "into a snake pit." *Ye v. United States*, 484 F.3d 634, 637 (3d Cir. 2007)(quoting *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982). Adopted by the Third Circuit in 1996, and later refined, the state created danger theory requires a plaintiff to show each of following four elements.

> (1) the harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Ye*, 484 F.3d at 638. Here, the Complaint sets forth a number of legal conclusions reciting the elements of state created danger claim. However, Appellants legal conclusions fail to state the elements of this type of claim because the case relates only to police inaction, not affirmative acts. The District Court properly dismissed Appellant's Complaint on the fourth element and, as argued below, the District Court could have dismissed upon any of the four elements of such a claim.

***(1) The harm ultimately caused was not foreseeable or fairly direct;***

Here, the District Court properly dismissed Appellant's claims because the claims are premised on a theory of "failure of the state to act" rather than on action that was foreseeable and fairly direct. The harm that ultimately befell Ms. McCoy was not within the alleged awareness of risk to the Appellee-Officers. The Appellee-Officers alleged lack of action was neither the catalyst nor the proximate cause of Ms. McCoy's death, but instead merely took place in the causal chain that ultimately led to Ms. McCoy's harm.

To properly allege a state-created danger claim, a plaintiff must allege facts showing that the "harm ultimately caused was a foreseeable and a fairly direct result of the state's actions." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 237 (3d Cir. 2008)(citing *Morse v. Lower Merion School Dist.,* 132 F.3d 902, 908 (3d Cir.1997)). To determine this first element of a state created danger claim courts ask '"whether the *harm ultimately caused* was a foreseeable and a fairly direct result of the state's actions." *Long v. Cnty. of Armstrong*, 679 F. App'x 221, 224 (3d Cir. 2017) *(quoting* Phillips, 515 F.3d at 238)) (emphasis in original). An officers affirmative actions "are the 'fairly direct' cause of the harm if the actions 'precipitated' or were the 'catalyst' for the harm that occurred." *Van Orden v. Borough of Woodstown New Jersey*, 703 F. App'x 153, 157 (3d Cir. 2017)(quoting *Morse*, 132 F.3d at 910). Furthermore, the affirmative actions "must be close in time and progression to the

ultimate harm, and it is insufficient if the causation is so attenuated that the official's actions merely 'took place somewhere along the causal chain that ultimately led to the victim's harm.'" *Van Orden*, at *id*. (quoting *Henry v. City of Erie*, 728 F.3d 275, 285 (3d Cir. 2013))(brackets omitted). Finally, a connection between state action and harm is "further attenuated" in circumstances where "a victim bears some responsibility for the risks she has incurred, [because, then] it is even more difficult to say that the 'state' has 'created' the 'danger' to her by its affirmative acts.'" *Van Orden*, at *id*. (quoting *Henry at* 285–86).

Here, the harm ultimately caused is too attenuated to be foreseeable and fairly direct under the first element of a state created danger claim. The Complaint identifies various alleged risks in the area where Ms. McCoy remained after the Appellee-Officers departed. The Appellant identified risks of harm including Ms. McCoy's clothing, a nearby gentlemen's club that attracts "unsavory patrons," train tracks, the nearby Sawmill Run Blvd. highway, and even the nature of the intersection where Ms. Crawford wrecked Ms. McCoy's car. JA37–38, ¶¶45, 47–51, 35–37. However, despite identifying this myriad of risks, the Complaint reveals that none of those conditions caused the ultimate harm that tragically befell Ms. McCoy. Instead, the Complaint alleges that Ms. McCoy left the intersection on foot and entered the road way portion of the West End Bridge where she walked into "the

oncoming lane against the flow of traffic."[6] JA39, ¶¶55–57. While walking in the roadway against the flow of traffic, Ms. McCoy was struck by a vehicle driven by John/Jane Doe, causing her to fall from the bridge and suffer fatal injuries caused by the fall. *Id*.

The Appellee- Officers' alleged lack of conduct did not put Ms. McCoy in the intersection known as the West End Circle where the Appellee-Officers encountered her. JA37, ¶33. Instead, Ms. Crawford's drunken driving forced Ms. McCoy into that intersection without a ride as Ms. McCoy's car was rendered inoperable by the wreck. JA34, ¶4. Moreover, Ms. McCoy was not injured in the West End Circle intersection. JA39, ¶¶55–57. Ms. McCoy walked out of that intersection and across nearly the entire West End Bridge before entering the roadway. *Id*. There are no allegations that Ms. McCoy's clothing caused the ultimate harm, that the gentlemen's club patrons caused the ultimate harm, that she was injured on Sawmill

---

6 


There is a pedestrian walkway on the west end bridge that connects the Three Rivers Heritage Trail on either side of the Ohio River.

Run Blvd. highway, or by an encounter with train tracks. Similarly, there are no allegations that these other conditions forced Ms. McCoy into the roadway on the Bridge. Moreover, there are no allegations that Ms. McCoy couldn't walk or care for herself while at the scene, only that she was intoxicated. There are no allegations that her intoxication caused her to fall on or purposefully enter the roadway. When the allegations are examined, it is clear from the face of the Complaint that the Appellee-Officers' alleged lack of conduct took place somewhere along a causal chain too attenuated to their alleged inaction to constitute a foreseeable or fairly direct cause of Ms. McCoy's ultimate harm. This Court should dismiss this appeal for this and the other reasons argued in this Brief.

***(2) No state actor acted with a degree of culpability that shocks the conscience;***

Appellant's state-created-danger claim also fails because the Appellee-Officers did not act with a degree of culpability that shocks the conscious.

To prevail on a state-created danger claim, a plaintiff must prove, among other things that "a state actor acted with a degree of culpability that shocks the conscience." *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006). There are "three possible standards [that] can be used to determine whether state action shocked the conscience: (1) deliberate indifference; (2) gross negligence or arbitrariness that indeed shocks the conscience; or (3) intent to cause harm. *Phillips*, 515 F.3d at 241. "The exact degree of wrongfulness necessary to reach the

'conscience-shocking' level depends upon the circumstances of a particular case," *Ricketts v. Titusville Area Sch. Dist.*, No. 24-2569, 2025 WL 2388772, at *2 (3d Cir. Aug. 18, 2025)(citing *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999)). Courts choose the appropriate standard by determining whether there was time for deliberation. *See Schieber v. City of Philadelphia*, 320 F.3d 409, 418–19 (3d Cir. 2003). The standard to establish state created danger claims is "purposefully high" requiring that a state actor "causes harm" and that they had a "conscious disregard of a substantial risk of serious harm." *Cuvo on behalf of A.C. v. Pocono Mountain Sch. Dist.*, No. 22-1576, 2023 WL 4994527, at *3 (3d Cir. Aug. 4, 2023). Importantly, "the mere *possibility* that an injury may result does not mean that there is a '*substantial risk*' of that injury occurring." *Cuvo on behalf of A.C. v. Pocono Mountain Sch. Dist.*, No. 22-1576, 2023 WL 4994527, at *3 (3d Cir. Aug. 4, 2023)(citing *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 257 (3d Cir. 2010))(emphasis in original).

Here, Appellant's claims "based solely on a failure of the state to act [are] clearly foreclosed by *DeShaney*." *Bright*, 443 F.3d at 284. The allegations in Appellant's complaint do not amount to deliberate indifference and instead amount, at most, to negligence. Appellant concludes that their Complaint required the District Court to infer that Ms. Crawford, who was arrested and drinking as much (or more) alcohol Ms. McCoy, could have offered protection to Ms. McCoy. Appellant Br. at

8. The Appellant also concludes that removing that protection through arrest was an affirmative action that was the fairly direct cause of Ms. McCoy's harm. *Id*. However, the Complaint in front of the District Court did not make such claims. Instead, Appellant's Complaint only stated claims of negligence and not of conscious shocking deliberate indifference. In fact, Appellants Complaint went so far as to categorize the Appellee-Officers actions as "negligent." JA 40. ¶ 60 ("[a]s a direct and proximate cause of the Defendants' **negligent conduct** as set forth below, Ms. McCoy was caused to suffer serious bodily injuries, harm and death.") (emphasis added).

Appellant also compares this case to *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996). However, the two cases are distinguishable. In *Kneipp*, police officers stopped a husband and wife who were both intoxicated. *Id*. at 1201. A defendant officer in *Kneipp* made statements to the husband, who was caring for the intoxicated wife, that led the husband to believe the officers would "assist his wife to safety." *Id*. at 1203. The husband went home and instead of following through on their assurances, the officers released the wife to walk home alone "despite cold weather and her obvious inebriation." *Id*. at 1208-09. The wife fell into a ravine and suffered permanent brain damage and other serious injuries. *Id*. at 1203. In reversing the order of the district court granting summary judgment, the Third Circuit held that a jury could find that the plaintiff was in a "worse position after the police intervened than

she would have been had [she been permitted to walk home under the care of her husband]." *Id*. at 1209.

Here, despite similarities, some crucial facts are critically different and dispositive in favor of the District Court's Opinion. For example, the Appellee-Officers didn't stop Ms. McCoy and Ms. Crawford on their way home. Rather, the Appellee-Officers met the two women when the Appellee-Officers were called to the scene of a wreck caused by Ms. Crawford. JA37, ¶ 36. In *Kneipp*, a *protector* was sent away with promises of care, whereas here no such caretaker or promises existed in this instant case. Rather, the "caretaker" was that was driving Ms. McCoy was intoxicated and drove the wrong way in a heavily trafficked intersection, which doesn't create an inference of protection. JA34, ¶¶2-4. There were no facts indicating that either woman was unable to call for a ride via cell phone. Whereas the events in *Kniepp* took place before the commonality of cell phones and ride sharing applications. There are no allegations, beyond mere conclusions, that either woman was unable to walk or care for themselves when the Appellee-Officers encountered the women. Whereas in *Kniepp* there were facts demonstrating that the wife was "profoundly impaired," such as her inability to stand and being carried. *Kniepp*, 95 F.3d at 1203. Additionally, in *Kneipp*, the officers were questioning the wife and let the husband go when he asked to get home to the couples child. *Id*. The roles in this case are reversed, Ms. McCoy was not kept by the officers then let go after Ms.

Crawford was led to believe she could rely on the officers to fill that her "protector" role. Finally, in *Kneipp*, the injuries resulting from the officers' affirmative actions were foreseeable and the officers' actions shocked the conscious because the harm was caused by the wife's obvious intoxication and the specific act of an officer indicating to the husband that the officers would protect his wife. Here, the injuries were caused by private parties other than the Appellee-Officers and partially buy Ms. McCoy's own actions. The third parties included Ms. Crawford who stranded the two at the intersection and the John/Jane Doe driver who hit Ms. McCoy. Ms. McCoy herself then walked into oncoming traffic. JA39, ¶¶55–57.[7] There were no affirmative actions taken by the Appellee-Officers in this scenario that shock the conscious because it is routine to have inoperable cars towed and it is also routine to arrest impaired drivers. Based on this argument and the other arguments throughout this Brief the decision of the lower court should be affirmed.

***(3) No relationship between the state and Ms. McCoy existed such that Ms. McCoy was a foreseeable victim of the Appellee-Officers acts, nor was she a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general.***

No relationship between the Appellee-Officers and Ms. McCoy existed such that she was a foreseeable victim of the affirmative acts of a state actor.

---

[7] Although it is omitted from the Complaint, Ms. McCoy also refused a ride from the Appellee-Officers.

Special relationships arise in Fourteenth Amendment due process cases when the State has custody and control over the individual, and thus, the state acquires an affirmative duty to protect the restrained individual from harm. This duty arises, "not from the knowledge of the individual's predicament or from its expressions of the intent to help him, but from limitation which it has imposed on his freedom to act on his own behalf." *DeShaney*, 489 U.S. at 200 (citation omitted). Generally, this rule is applicable in the context of incarceration and institutionalization. This special duty generally ends when the individual is released from custody. *See Id.*, at 201 ("[t]hat the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all . . ."); *Ye*, 484 F.3d at 637 n.1. ("[t]his Court 'has read *DeShaney* primarily as setting out a test of physical custody' for purposes of determining whether there is a 'special relationship'") (quoting *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1370 (3d Cir.1992)(en banc)). Courts have been relatively strict with this consideration, refusing to extend a "special relationship" to situations with compulsory attendance, like school settings. *See id*. The relationship under the third element of state created danger claims "must be "sufficiently close." *Long v. Cnty. of Armstrong*, 679 F. App'x 221, 223 (3d Cir. 2017)(quoting *Rivas v. City of Passaic*, 365 F.3d 181, 197 (3d Cir. 2004)). However, when a state action "creates only a threat to the general

population," a plaintiff must demonstrate a "sufficiently close relationship" that creates a duty of protection "from the random, violent acts of private persons." *Long*, at *id*. (internal citations omitted).

Here, there was no special relationship and no special duty of protection was triggered. According to the Complaint, Ms. McCoy was briefly in custody, but was also released from custody while on the scene. JA39, ¶ 52. There were no allegations that Ms. McCoy's brief detention caused her injuries or that the detention urged Ms. McCoy to walk in the roadway on the West End Bridge. Similarly, there are no allegations demonstrating that when Ms. McCoy was in custody that the Appellee-Officers discovered that Ms. McCoy would need special care after she was released. Moreover, there are claims that sidewalks existed in this area, which means it was an area open to pedestrians, even at night. *Id*., ¶51. Ultimately, the detention did not alter the causal chain that led to Ms. McCoy's ultimate harm. It was only after the Officers left the scene that Ms. McCoy was struck by a vehicle driven by an unknown individual on the bridge. JA35, ¶¶11-12.

***(4) No state actor affirmatively used his authority in a way that created a danger to Ms. McCoy or that rendered Ms. McCoy more vulnerable to danger than had the state not acted at all.***

The Appellee-Officers took no affirmative acts to create or increase the dangers to Ms. McCoy.

"Liability under the state created danger theory is predicated upon the states' affirmative acts which work to plaintiffs' detriments in terms of exposure to danger." *Brookens v. City of Philadelphia*, No. 22-1201, 2023 WL 4231712, at *2 (3d Cir. June 28, 2023)(citing *Kneipp*, 95 F.3d at 1207). When a plaintiff "fails to establish that the state took an affirmative action[,] there is simply no state-created danger. *Brookens*, at *id*. "It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright*, 443 F.3d at 282.

The Appellee-Officers did not assume responsibility for her protection when they arrested Ms. Crawford or moved Ms. McCoy's inoperable car from the traffic median. Although, the Appellee-Officers are alleged to have smelled alcohol on Ms. McCoy's person, there are no allegations that Ms. McCoy demonstrated signs of intoxication so great that she could not walk or care for herself. Finally, the facts alleged in Appellant's Complaint do not permit an inference, as Appellant argues, that Ms. McCoy would have been more safe if the Appellee-Officers did not arrest Ms. Crawford who, instead of getting Ms. McCoy to safety, ultimately stranded Ms. McCoy without a car. Such an inference is not reasonable, like it was in *Kneipp*, because there are no allegations in the Complaint demonstrating that Ms. Crawford was caring for, rather than just drinking with, Ms. McCoy.

Although this case presents a saddening fact pattern, it fails to meet the standard required to establish a state-created danger because the essence of the claim

is that after the Appellee-Officers arrested Ms. Crawford, they allegedly failed to act on behalf of Ms. McCoy. This failure to act is not an affirmative act increasing the danger to Ms. McCoy. When the Appellee-Officers arrested Ms. Crawford, Ms. McCoy was already in the intersection without an operable car and with no reliable protector. Additionally, although the Complaint states that the intersection was itself the danger to Ms. McCoy, it is clear from the Complaint that when a car hit Ms. McCoy she was on the opposite end of the West End Bridge and had managed to leave pedestrian areas and enter the roadway. JA35, ¶12. Neither Ms. Crawford's arrest nor towing the inoperable car, which were the affirmative actions, placed or directed Ms. McCoy in the West End Circle, on the opposite side of the bridge, or into the roadway. Thus, the Appellee-Officers' leaving Ms. McCoy in an allegedly dangerous intersection without an inoperable car did not cause Ms. McCoy's harm. Instead, the actions of a private actor or actors did cause the tragic death. The Appellee-Officers are only accused of inaction as to Ms. McCoy which is why the District Court correctly dismissed Appellant's claims.

### B. THE DISTRICT COURT GRANTED APPELLANT LEAVE TO AMEND.

This appeal as to the District Court's alleged error for failure to grant leave to amend should be dismissed because the district court expressly granted leave to amend. JA17-18. Appellant simply did not amend his Complaint. Instead, Appellant ignored the deadline, and under the District Court's prior order the dismissal was

properly converted to a dismissal with prejudice. Rather than make any motion to convert the ruling on the lack of amendment to a dismissal without prejudice, Appellant instead argued for reconsideration of all the claims under a different standard. JA20-21. Appellant's arguments for reconsideration failed because there was no basis to grant Appellant's Motion for Reconsideration under the standard controlling reconsideration motions. *Id*. Similarly, Appellant's arguments on appeal do not relate to the missed leave to amend and instead blame the District Court for applying an incorrect standard. There is no basis in this appeal to reverse the decisions of the lower court based on a failure to grant leave to amend, especially when the Court did exactly that.

Here, the District Court did not dismiss for lack of prosecution, rather it appears that the District Court granted Appellant leave to amend and he simply chose not to amend. *See* JA17–19; JA30-31. About five days after the amendment deadline passed the District Court honored its previous order, without objection from Appellant. The District Court, as it ordered, converted the dismissals without prejudice to dismissals with prejudice when Appellant did not amend by the date set for amendment. *Id.* Appellant then waited another week to file his Motion for Reconsideration, which did not request leave to amend, did not offer any explanation for abandoning its amendment, and did not address the futility issues identified by the court. JA20-21. On appeal, Appellant again ignores this procedural history,

provides no argument explaining the lack of amendment and thereby waives any challenge to the district court's enforcement of its own order. *See F.D.I.C. v. Deglau*, 207 F.3d 153, 169 (3d Cir. 2000). The District Court was entitled to follow its own orders and convert the dismissals without prejudice into dismissals with prejudice. This Court should deny the appeal and affirm judgment because the District Court properly enforced its deadlines under its July 18, 2025 order.

### C. THE DISTRICT COURT'S QUALIFIED IMMUNITY ANALYSIS WAS CORRECT.

#### *(1) There was no Constitutional injury.*

As argued above, there was no violation of a constitutional right in this case. Appellant's argument depends on reframing the Officers' conduct as an "affirmative act" and relying on *Kneipp*, which is distinguishable. However, it remains the law that an alleged failure to act, such as a failure to transport someone to safety, cannot serve as the basis of a state-created danger claim. *Johnson v. City of Philadelphia*, 975 F.3d 394, 401 (3d Cir. 2020). This Court has "repeatedly held that an alleged failure to do something, standing alone, cannot be the basis for a state-created danger claim." *Id*. The District Court correctly applied that principle in concluding that the Appellant's claim rests on an omission rather than an affirmative act. JA16 ("[t]he right at issue centers on the Officers' failure to transport Ms. McCoy to a safe location."). The Appellant's allegations say the same. JA41, ¶41 ("[b]y impounding Ms. McCoy's care **and failing to transport her to an indoor place of safety, such**

**as the police station, her home, or a friends home** . . .")(emphasis added). Attempts on appeal to recast a lack of action as an affirmative act are precisely the type of "attempts to redefine clearly passive inaction as affirmative acts" that this Court has rejected in the past. *Morrow v. Balaski*, 719 F.3d 160, 178 (3d Cir. 2013); *see also Hall v. Ligonier Valley Police Dep't*, 2025 WL 563813, at *10 (W.D. Pa. Feb. 20, 2025).

Appellant's position also conflicts with long-settled precedent confirming that officers do not have an affirmative constitutional duty to take a private individual into custody for her own protection. *DeShaney*, 489 U.S. at 195 (1989). The Constitution "does not create an affirmative duty to protect." *Id*. at 197. This Court has likewise concluded that "there is no constitutional right to be arrested promptly or otherwise." *United States v. Joines*, 258 F.2d 471, 473 (3d Cir. 1958). Based on the fact that this sad case is premised on state inaction, which is not the basis of a constitutional violation premised on a state created danger theory, this Court should dismiss the appeal and affirm the opinion of the District Court.

***(2) The District Court properly found that there was no violation of a clearly established right.***

The District Court considered each side's characterization of the right at issue in its qualified immunity analysis. JA15-16. Appellant argued to the District Court that "the right to be free from a state-created danger" was clearly established. *Id*. However, that broad formulation, is precisely the type of "high level of generality"

that the Supreme Court has repeatedly rejected. *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). The District Court correctly required a more particularized articulation of the right, one that reflected the specific factual context: a right that focused on whether the Appellee-Officers had to take affirmative action after making an arrest and towing an inoperable car to make sure that Ms. McCoy arrived somewhere safe after they left. JA16.

Now on appeal, Appellant argues that based primarily on *Kneipp* the right of an intoxicated person not be separated from their "intoxicated companion" and being left alone to "fend for herself on the street at night" was clearly established. Appellant Br. at 25. This is incorrect. A right is "clearly established" only if "every reasonable official would have understood that what he is doing violates th[e] right." *Zaloga v. Borough of Moosic*, 841 F.3d 170, 175 (3d Cir. 2016) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 2012)). To determine whether a right is clearly established a court must "look first for 'applicable Supreme Court precedent.'" *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 142 (3d Cir. 2017) (quoting *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir.), *as amended* (Mar. 21, 2016)). If there is no Supreme Court precedent, a plaintiff must point to a "robust consensus of cases of persuasive authority in the court of appeals that could clearly establish a right for purposes of qualified immunity." *Barna* at 142. Appellant has not argued there is Supreme Court

precedent, instead relies primarily on a distinguishable case from the Third Circuit and another from the Ninth Circuit. However, there are a number of cases that support the contention that the Appellee-Officers did not act affirmatively, and thus, demonstrate that permitting an intoxicated individual to leave a scene after her intoxicated companion was arrested is not a violation of clearly established law.

For example, the cases the District Court cited support the fact that the alleged right at issue was not clearly established. In *Wyatt v. Krzysick*, a district court found that permitting an individual who was already driving drunk to continue driving drunk did not put that individual in any more dangerous of a situation than when officers stopped that individual. *Wyatt v. Krzysiak*, 82 F. Supp. 2d 250, 259 (D. Del. 1999)("It follows that Krzysiak did not increase the risk of harm to Wyatt, even if he told her to drive while under the influence of alcohol"); *See also Villanueva v. El Paso Cnty.*, 463 F. Supp. 3d 1202, 1212–13 (D. Colo. 2020)("Defendants cannot be said to have placed plaintiff in immediate threat of harm by simply positioning themselves in a parking lot and allowing plaintiff to walk through it. Even if entering the perimeter did place plaintiff in immediate threat of harm . . . . The crux of the matter here, as in *Ruiz*, is that the conduct was not directed at plaintiff . . .") (internal citations omitted); *Jones v. Reynolds*, 438 F.3d 685, 691 (6th Cir. 2006)("[t]he officers, it is true, came upon an illegal drag race and failed to stop it—or at least discourage it if, as appears to be the case, the race was being held on streets beyond

their jurisdiction."); *Sanford v. Stiles*, 456 F.3d 298, 312 (3d Cir. 2006)("[a]s the District Court noted, [plaintiff] has attempted to 'recharacterize' [school employee]'s failures as 'affirmative actions.' We believe that this case is more about [school employee]'s failure to *prevent* [student who committed suicide]'s death. As we have stated many times, 'mere failure to protect an individual ... does not violate the Due Process Clause.'")(*quoting Bright*, 443 F.3d at 281)

Ms. Crawford's arrest, the affirmative conduct in this case, was not directed towards Ms. McCoy. There was only alleged inaction as to Ms. McCoy. Although the Appellee-Officers did detain Ms. McCoy, the detention did not reveal any need to further aide Ms. McCoy after the officers left the scene. Moreover the detention did not enhance or create the dangers Ms. McCoy faced when the officers failed to drive her somewhere safer after Ms. Crawford's arrest. Finally, during the time the Appellee-Officers were in the intersection with the two women, Ms. Crawford blatantly told the Appellee-Officers that they couldn't help the women with finding a ride home. JA63, Crawford, Affidavit of Probable Cause [8](Crawford then began to

---

[8] The Complaint specifically references and relies upon Officer Norman's affidavit of probable cause establishing probable cause for Ms. Crawford's arrest, and thus, should be incorporated into the facts considered by this Court. JA34 ¶¶ 7, 40-43. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 134 (3d Cir. 2016)(In deciding motions under Rule 12(b)(6), courts may consider document[s] integral to or explicitly relied upon in the complaint or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document,"((internal citations omitted)(emphasis in original). Appellee-Officer's attached the affidavit as an exhibit to their Motion to Dismiss.

argue with McCoy saying to her that they needed to find a way home. She then looks at officers and stated that we would not help them.") Appellant's attempt to recharacterize the Appellee-Officers allege failures as to Ms. McCoy as affirmative actions should be rejected. There is no clearly established right to be free from a state actors failure to act, and thus, this Court should affirm the District Court's ruling on qualified immunity.

## CONCLUSION

For the reasons stated in this Brief, the Appellee-Officers respectfully request that this Court affirm the District Court's rulings at issue in this appeal.

Respectfully submitted,

s/ *Julie E. Koren, Esq.*
Julie E. Koren, Esq., PA ID No. 309642
Associate City Solicitor

414 Grant Street
Pittsburgh, PA 15219
Julie.Koren@pittsburghpa.gov
*Counsel for Defendant City of Pittsburgh, Officer Norman, Officer Shields, and Officer Sokolowski*

JA 63-65. The District Court did not seemingly rely on the facts in the affidavit of probable cause.

## COMBINED CERTIFICATES

**Bar Membership:** I hereby certify that I am a member of the United States Court of Appeals for the Third Circuit.

**Word count and typeface:** This brief complies with Rule 32. It contains fewer than 30 pages (excluding the cover page, tables, and combined certifications) and contains no more than 13,000 words. This brief complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it is set in 14-point Times New Roman font, a proportionally spaced typeface.

**Service:** This brief was submitted electronically to the Court on December 17, 2025, and because Appellant's Attorneys are registered CM/ECF users they will be served electronically via ECF. Seven paper copies of this brief will be sent to the Court for delivery within five days.

**Identical compliance of briefs:** The text of the electronic version of this Brief is identical to the text of the paper copies filed with the Court.

**Virus check:** I hereby certify that a virus scan was run on the electronic version of the Brief and Appendix.

Respectfully submitted,

*/s/ Julie E. Koren*
Julie E. Koren