No. 25-2592

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

MICHAEL NAHAS, individually and as Administrator of the ESTATE OF FAYE McCOY, Decedent, and on behalf of the Estate's sole beneficiary, DSP, Jr., Ms. McCoy's minor child,
Plaintiff–Appellant,

v.

CITY OF PITTSBURGH, a Municipal Corporation; OFFICER ZACARIAH NORMAN; OFFICER EMILY SHIELDS; OFFICER MICHAEL SOKOLOWSKI; ARTHUR JEFFREY, INC., a/k/a ART'S TAVERN; JANE DOE; JOHN DOE,
Defendants–Appellees.

Appeal from the United States District Court
for the Western District of Pennsylvania, No. 2:24-cv-01252

# BRIEF OF PENNSYLVANIA, IOWA, AND 19 ATTORNEYS GENERAL AS *AMICI CURIAE* IN SUPPORT OF APPELLEES AND AFFIRMANCE


DAVID W. SUNDAY, JR.
Attorney General of Pennsylvania

DANIEL B. MULLEN
Chief Deputy Attorney General
Chief, Appellate Litigation Section
1251 Waterfront Place
Pittsburgh, PA 15222
(717) 562-4192

BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
(515) 281-4209 (fax)


October 1, 2026

*Counsel for Amicus Pennsylvania and Iowa Attorneys General*
*(Additional counsel listed after signature block)*

## CORPORATE DISCLOSURE STATEMENT

Amici curiae are sovereign States. They are not corporations, they issue no stock, and no publicly held corporation has any interest in the outcome of this appeal. No disclosure is required under Federal Rule of Appellate Procedure 26.1 or Third Circuit Local Appellate Rule 26.1.

## RULE 29 STATEMENT

This Court's August 5, 2026 order invited amicus briefing on the ordered question and welcomes briefs "from others who may have an interest in the issue." Amici States may also file without leave of court under Federal Rule of Appellate Procedure 29(a)(2).

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ................................ ii

RULE 29 STATEMENT ................................................................ ii

TABLE OF CONTENTS ............................................................. iii

TABLE OF AUTHORITIES ........................................................... v

STATEMENT OF AMICUS CURIAE ............................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT .................. 4

ARGUMENT .............................................................................. 7

I. The Certified Question Cannot Be Answered Until the Asserted Right Is Carefully Described, and Thirty Years of This Court's Cases Have Never Carefully Described It. .......... 7

II. No Liberty Interest in Freedom From State-Created Danger Was Deeply Rooted in This Nation's History and Tradition When the Fourteenth Amendment Was Ratified. ................... 11

A. The common law imposed no duty to rescue, and ratification did not change that. ...................................... 11

B. A peace officer's duty of protection ran to the public, not to any individual. ............................................................ 12

C. Kneipp rested on two sentences of *DeShaney* dicta rather than on any historical inquiry. ............................ 14

III. The State-Created Danger Doctrine Displaces the States' Democratic Judgments About When Officers Pay. ................ 15

IV. Overruling *Kneipp* Leaves Every Genuine Constitutional Claim Intact. ........................................................................ 18

CONCLUSION........................................................................ 20

CERTIFICATE OF COMPLIANCE ............................................ 22

CERTIFICATE OF SERVICE ..................................................... 22

## TABLE OF AUTHORITIES

### Cases

*Bright v. Westmoreland County*,
443 F.3d 276 (3d Cir. 2006) ........................................................ 14
*Buch v. Amory Mfg. Co.*,
44 A. 809 (1897)............................................................................ 11
*Collins v. City of Harker Heights*,
503 U.S. 115 (1992) ......................................................7, 8, 10, 17
*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) .................................................................... 10
*Crawford v. Pennsylvania*,
326 A.3d 850 (Pa. 2024)................................................................ 9
*Daniels v. Williams*,
474 U.S. 327 (1986) .................................................................... 17
*Dep't of State v. Muñoz*,
602 U.S. 899 (2024) .............................................................. 2, 5, 8
*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
489 U.S. 189 (1989) ..............................2, 4, 10, 12, 14, 15, 18, 19
*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) ............................................................ 2, 5, 12
*Estate of Smith v. Marasco*,
430 F.3d 140 (3d Cir. 2005) ...................................................... 6, 9
*Fisher v. Moore*,
73 F.4th 367 (5th Cir. 2023) ....................................................... 15
*Kneipp v. Tedder*,
95 F.3d 1199 (3d Cir. 1996).............................1, 4, 5, 9, 10, 13, 14
*Miller v. Wolk*,
2026 WL 1587518 (3d Cir. June 3, 2026)...................................... 5
*Moore v. East Cleveland*,
431 U.S. 494 (1977) ...................................................................... 5
*Murguia v. Langdon*,
73 F.4th 1103 (9th Cir. 2023)...................................................... 14
*Nahas v. Norman*,
2025 WL 2021919 (W.D. Pa. July 18, 2025)........................... 9, 19
*Palko v. Connecticut*,
302 U.S. 319 (1937) ...................................................................... 5

*Patzig v. O'Neil*,
577 F.2d 841 (3d Cir. 1978) ........................................................ 18
*Paul v. Davis*,
424 U.S. 693 (1976) .................................................................. 17
*Sauers v. Borough of Nesquehoning*,
905 F.3d 711 (3d Cir. 2018)...................................................... 5, 9
*South v. Maryland*,
59 U.S. (18 How.) 396 (1855).......................................... 4, 12, 13
*Town of Castle Rock v. Gonzales*,
545 U.S. 748 (2005) .............................................................. 6, 13
*Union Pac. Ry. Co. v. Cappier*,
72 P. 281 (1903) ........................................................................ 11
*Walker v. Detroit Public School*,
535 Fed. App'x 461 (6th Cir. 2013)............................................... 9
*Washington v. Glucksberg*,
521 U.S. 702 (1997) ........................................................ 2, 6, 7, 8
*Ye v. United States*,
484 F.3d 634 (3d Cir. 2007) ......................................................... 8

**Statutes**

42 Pa. Cons. Stat. § 8541 ......................................................... 8, 20
50 P.S. § 7301(a)......................................................................... 23
Iowa Code § 670.4A.................................................................. 8, 21

## STATEMENT OF AMICUS CURIAE

Amici are the States of Pennsylvania, Iowa, Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Kansas, Louisiana, Missouri, Montana, Nebraska, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, and Utah. They enforce their own criminal laws, employ and defend the officers who enforce them, and pay when those officers are held liable. Amici States have a direct interest in whether the Fourteenth Amendment silently converts every judgment call at a roadside stop into a federal damages claim.

Consider the encounter that generated this case. In 2024, law-enforcement officers nationwide made roughly 805,000 arrests for driving under the influence. Fed. Bureau of Investigation, *Crime Data Explorer: Persons Arrested* (2024). Many of those drivers had passengers.

Under Appellant's theory, every one of those arrests posed the arresting officer a federal constitutional question: whether taking the driver away left the passenger "more vulnerable to danger than had the state not acted at all," *Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3d Cir. 1996), and, if so, what the Due Process Clause obliged the officer to do next. Now add welfare checks, disturbance calls, hospital transports, and every other encounter in which an officer's arrival changes a private person's circumstances.

Amici States have answered those questions already—through their Legislatures. For example, Pennsylvania's General Assembly immunized local agencies from tort liability and then carved out ten exceptions, none of which reaches a failure to escort an intoxicated pedestrian to safety. 42 Pa. Cons. Stat. §§ 8541, 8542(b). And Iowa codified a qualified-immunity defense and a heightened pleading standard for damages actions against public employees. Iowa Code § 670.4A. Those statutes reflect the will of the electorates of those States. They codify the balance between how much protection the public may demand and who pays when it is not delivered. The Supreme Court in *DeShaney* left that settlement "to the democratic political processes." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989).

The state-created danger doctrine unsettles that understanding. The doctrine routes around every state immunity statute by relabeling ordinary negligence a constitutional violation—and it does so with no Originalist or textualist basis. There's no constitutional text nor ratification-era practice that justifies such a move. Amici respectfully urge the Court to answer the certified question "no" and overrule *Kneipp*.

*Kneipp* predates *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997), and far predates *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 237 (2022), as well as *Dep't of State v. Muñoz*,

602 U.S. 899, 910 (2024). It has been abrogated by those Supreme Court cases and applies the wrong test. This Court should recognize that and overrule it.

## INTRODUCTION AND SUMMARY OF ARGUMENT

For the first century and a half of the Fourteenth Amendment's existence there was no question as to whether the Constitution protected citizens from state-created dangers. It did not. A peace officer's duty to keep people safe ran to the public at large rather than to any specific person. *See South v. Maryland*, 59 U.S. (18 How.) 396, 402–03 (1855). The common law imposed no duty to rescue a stranger, no matter how easy the rescue and no matter how dire the peril.

And as the Supreme Court held in *DeShaney*, the Fourteenth Amendment "forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." 489 U.S. at 195.

Seven years later, this Court found an exception anyway. *Kneipp* took two sentences of *DeShaney* dicta and built from them a "state-created danger" theory of substantive due process. 95 F.3d at 1201, 1205. The Court conducted no historical inquiry. It did not describe the asserted right with care, or at all. Bad facts are said to make bad law. This Court reasoned from a set of "undeniably tragic" facts to a constitutional rule. *DeShaney*, 489 U.S. at 191.

The Supreme Court has since made clear that unenumerated rights cannot be found in the modern court's dicta. A court must first offer a "careful description of the asserted fundamental liberty interest," and then ask whether that carefully described right is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Glucksberg*, 521 U.S.at 720–21 (quoting *Moore v. East Cleveland*, 431 U.S. 494, 503 (1977) (plurality op.) and *Palko v. Connecticut*, 302 U.S. 319, 325–26 (1937)); *see Dobbs*, 597 U.S. at 237; *Muñoz*, 602 U.S. at 910. Both steps are mandatory, and both exist because "[i]dentifying unenumerated rights carries a serious risk of judicial overreach." *Muñoz*, 602 U.S. at 910 (quoting *Glucksburg*, 521 U.S. at 721).

This Court's state-created danger doctrine fails both steps. *See Miller v. Wolk*, 2026 WL 1587518, at *5–7 (3d Cir. June 3, 2026) (Phipps, J., concurring in the judgment).

*First*, the doctrine has never been reduced to a carefully described right describing the fundamental liberty interest. Thirty years of decisions have produced a different described right in every case—a right to be free from being sent "home unescorted in a visibly intoxicated state in cold weather," *Kneipp*, 95 F.3d at 1209; a right not to be injured by a "reckless pursuit of an individual suspected of a summary traffic offense," *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018); a right to be free of

conduct that is "conscience shocking" as measured by "the circumstances of a particular case," *Estate of Smith v. Marasco*, 430 F.3d 140, 153 (3d Cir. 2005). A right that changes shape with every complaint does not satisfy *Glucksburg*'s first step.

*Second*, no such right is deeply rooted. At common law a bystander owed no duty to aid, a public officer owed his protective duty to the public, and municipal corporations were not answerable in damages for failing to furnish police protection. Nothing in the ratification record suggests the Fourteenth Amendment reversed course for those duties or, more accurately, the lack thereof. Undeniably, the tradition runs the other way. The Supreme Court recognized this when it described "[a] well established tradition of police discretion" that "has long coexisted with apparently mandatory arrest statutes." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 760 (2005).

*Third*, the doctrine displaces the States' own settled judgments about officer liability. Pennsylvania, Iowa, and every other State have enacted detailed schemes governing when public employees may be sued, for what, and up to what amount. The state-created danger doctrine could override those statutes—not by any act of Congress, but by judicially interpreting a clause that "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living

together in society" as instead doing just that. *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992) (citation omitted).

*Fourth*, overruling *Kneipp* costs nothing that the Constitution actually protects. *DeShaney*'s custodial rule survives. So do Fourth Amendment claims, claims for affirmative abuses of state power recognized under the common law, and state-law tort remedies. What disappears is a judicially created cause of action for negligence—which is what the doctrine has always boiled down to.

This Court should hold that no liberty interest in freedom from "state-created danger" is deeply rooted in this Nation's history and tradition, and this Court's contrary precedents were overturned by *Glucksberg*, especially as clarified by *Dobbs* and *Muñoz*.

## ARGUMENT

### I. The Certified Question Cannot Be Answered Until the Asserted Right Is Carefully Described, and Thirty Years of This Court's Cases Have Never Carefully Described It.

*Glucksberg*'s threshold requirement is that, before a court asks whether a right is deeply rooted, the court must say what the right is with precision; this is because "[b]y extending constitutional protection to an asserted right or liberty interest" courts "place the matter outside the arena of debate and legislative action." *Glucksberg*, 521 U.S. at 720 (citation omitted). Thus, Courts must

"exercise the utmost care whenever we are asked to break new ground in the field." *Collins*, 503 U.S. at 125.

*Muñoz* enforced that *Glucksberg*'s first step imposes a threshold requirement last term. Faced with a claimed right to have a noncitizen spouse admitted, the Court began by "pin[ning] down the nature of the right" and rejected the plaintiff's alternative formulations before reaching the history and *Glucksberg*'s second prong. 602 U.S. at 910.

Turning *Glucksberg*, as interpreted by *Muñoz*, on the state-created danger doctrine, the only conclusion is that the purported liberty interest vindicated by the doctrine has never been pinned down in a way that could satisfy *Glucksberg*'s first step. The elements of a state-created-danger claim describe the State's conduct, including considering foreseeability, a culpability that "shocks the conscience," a relationship making the plaintiff a foreseeable victim, and an "affirmative use[]" of authority that "created a danger" or "rendered the citizen more vulnerable to danger than had the state not acted at all." *Ye v. United States*, 484 F.3d 634, 638 (3d Cir. 2007). It is hard to discern the protected liberty interest inherent in that list of relevant factors. It cannot be done, because the doctrine identifies wrongful state action without ever identifying the constitutional entitlement that the action invades.

The doctrine is amorphous enough that litigants have even attempted to argue that government policy-making choices can constitute state-created dangers. *See*, *e.g.*, *Crawford v. Pennsylvania*, 326 A.3d 850, 880–84 (Pa. 2024) (rejecting claim that a state firearm preemption statute constitutes a state-created danger); *Walker v. Detroit Public School*, 535 Fed. App'x 461 (6th Cir. 2013) (rejecting the claim that merging two high schools constituted a state-created danger). That too undermines the claim that the right is clearly defined.

Relying on that amorphous notion of a liberty interest at step one, courts considering state-created danger claims have proceeded with concerning analytical variability. This Court has located the right in the particular facts of each case as it comes up. In cold weather and intoxication, *Kneipp*, 95 F.3d at 1209; in a high-speed chase over a summary traffic offense, *Sauers*, 905 F.3d at 717; in whatever conduct "shocks the conscience" given "the circumstances of a particular case," *Marasco*, 430 F.3d at 153.

Below, the parties and the district court each described the right at issue differently. Appellant now describes it as a right to have a friend not arrested when that friend might have helped. The district court described it as a right not to be left "alone and intoxicated in the middle of the night in a busy intersection." *Nahas*

*v. Norman*, 2025 WL 2021919, at *6 (W.D. Pa. July 18, 2025). The Appellee-Officers describe it as a right to affirmative rescue.

*Muñoz* teaches that such indeterminacy is an answer. When a court cannot state that right at the level of generality the Constitution requires, it has not found a right. *Glucksberg* demands a careful description of the right. That careful description is not only critical to the constitutional analysis, but necessary to counterbalance that "[j]udges and lawyers, like other humans, are moved by natural sympathy in a case like this." *DeShaney*, 489 U.S. at 202–03.

Appellants try to describe the right at the highest possible altitude, a "liberty interest in personal security." *Kneipp*, 95 F.3d at 1201. But that formulation proves too much. Every tort is an injury to personal security. If a "liberty interest in personal security" stated a substantive due process claim whenever a state actor's conduct contributed to a private injury, § 1983 would swallow state negligence law. The Supreme Court has rejected that move at least twice. *Collins*, 503 U.S. at 128; *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

## II. No Liberty Interest in Freedom From State-Created Danger Was Deeply Rooted in This Nation's History and Tradition When the Fourteenth Amendment Was Ratified.

Even if a hypothetical right could be described at the proper level of generality, it has no deep roots in our Nation's history. The tradition at the founding and at ratification of the Fourteenth Amendment pointed in one direction: the government owed protection to the public generally, and no individual could sue when the protection failed specifically as to them.

### A. The common law imposed no duty to rescue, and ratification did not change that.

To be sure, the rule could lend itself to harsh results. A bystander who could save a drowning child with no risk to himself owed the child nothing the law would enforce. *See Buch v. Amory Mfg. Co.*, 44 A. 809, 810 (1897) ("With purely moral obligations the law does not deal."); *Union Pac. Ry. Co. v. Cappier*, 72 P. 281, 282 (1903); *see also* Restatement (Second) of Torts § 314 (1965) ("The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."). Nineteenth-century American law drew a bright line between misfeasance and nonfeasance, and it placed failure to protect on the nonfeasance side.

Nothing in the drafting or ratification of the Fourteenth Amendment disturbed that line. The Amendment's Due Process

Clause is "phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney*, 489 U.S. at 195. Its purpose "was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196. A constitutional clause written to restrain government cannot, without more, be read to conscript government into rescue service.

Appellant offers no Reconstruction-era evidence to the contrary. Neither was such historical grounding offered in *Kneipp*. Nor has there been a decision backing up the purported right with historical evidence in the thirty years since *Kneipp*. That silence is dispositive under *Dobbs*, which held that a party claiming an unenumerated right "must show that the right is somehow implicit in the constitutional text" and then must survive "a careful analysis of the history of the right at issue." 597 U.S. at 235–238. Without more, the right cannot be found.

### B. A peace officer's duty of protection ran to the public, not to any individual.

The Supreme Court settled that thirteen years before the Fourteenth Amendment was ratified. In *South v. Maryland*, a plaintiff sued a sheriff for failing to protect him from a mob that held him captive for four days. The Court held the suit could not lie. The sheriff's protective function was "a public duty, for neglect of

which he is amenable to the public, and punishable by indictment only." 59 U.S. (18 How.) at 403. Only where an officer "acts ministerially, and is bound to render certain services to individuals, for a compensation in fees or salary" was he "liable for acts of misfeasance or nonfeasance to the party who is injured by them." *Id.* at 402–03.

That is the public-duty rule, and it was the settled American law when the Fourteenth Amendment was framed. It survived into the twentieth century in nearly every State. And the Supreme Court invoked its logic as recently as *Castle Rock*, where it described "[a] well established tradition of police discretion" that "has long coexisted with apparently mandatory arrest statutes," 545 U.S. at 760, and held that "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause," *id.* at 768.

Now compare *Kneipp* to *DeShaney* and *Castle Rock*. *Kneipp* holds that when officers stop two intoxicated people and release one, the Constitution obliges them to see to the other's safety. 95 F.3d at 1209–10. *South* squarely denied that duty, imposed on the same officers, enforced by the same private damages action, under a Constitution ratified against the background of that denial.

Rather than deeply rooted in our nation's history, the approach set out in *Kneipp* contradicts it.

### C. Kneipp rested on two sentences of *DeShaney* dicta rather than on any historical inquiry.

*Kneipp*'s actual foundation is thin and this Court has recognized that. In *Bright v. Westmoreland County*, the Court traced *Kneipp*'s "state-created danger doctrine" to dicta in *DeShaney*. 443 F.3d 276, 281 (3d Cir. 2006). Specifically, *DeShaney*'s observation that "[w]hile the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." 489 U.S. at 201. From a sentence explaining why the plaintiff lost, the circuits derived a theory under which other plaintiffs win.

Judge Bumatay, joined by three colleagues, put the point plainly: the doctrine "finds no support in the text of the Constitution, the historical understanding of the 'due process of law' or even Supreme Court precedent," and rests on "just two sentences" of a 1989 opinion. *Murguia v. Langdon*, 73 F.4th 1103, 1104–05 (9th Cir. 2023) (Bumatay, J., dissenting from denial of rehearing en banc).

Indeed, Judge Bumatay's opinion includes a helpful chart with the status of each circuit's (differing) approach to this test. That includes the Fifth Circuit, which has declined to adopt the theory at all, reasoning that "the Supreme Court has recently—and

forcefully—underscored that substantive due process is a disfavored doctrine prone to judicial improvisation," and noting the absence of "meticulous briefing on how state-created danger liability meets today's reinvigorated test." *Fisher v. Moore*, 73 F.4th 367, 373–74 (5th Cir. 2023).

This Court now has that meticulous briefing. It should reach the conclusion the Fifth Circuit recognized is compelled by *Glucksberg*, *Dobbs*, and *Muñoz*.

## III. The State-Created Danger Doctrine Displaces the States' Democratic Judgments About When Officers Pay.

*DeShaney* explained why the Constitution does not impose a duty to protect. "The Framers were content to leave the extent of governmental obligation in the latter area to the democratic political processes." 489 U.S. at 196. States have used those processes to direct how claims should be resolved, but the state-created danger doctrine risks overturning those results.

Take Pennsylvania, where the case below occurred. Its General Assembly declared local agencies immune from damages for injuries caused by the agency or its employees, 42 Pa. Cons. Stat. § 8541, then enumerated only ten exceptions, including: vehicle liability, personal property, real property, trees and traffic controls, utility service facilities, streets, sidewalks, animals, and certain sexual-offense conduct. *Id.* § 8542(b). A Legislature that specifies

ten exceptions has decided that there is not an unenumerated eleventh. Failing to escort an intoxicated pedestrian away from an intersection is not on the list.

For another example, look to Iowa. In 2021, the General Assembly enacted Iowa Code § 670.4A, which extends qualified immunity to employees of municipalities unless "[t]he right, privilege, or immunity secured by law was clearly established at the time of the alleged deprivation," and requires a plaintiff to "state with particularity the circumstances constituting the violation." Iowa Code §§ 670.4A(1), (3). Iowa's elected representatives balanced accountability against the risk of over-deterring officers who must act on incomplete information. The federal Constitution reserves that policy choice to them.

The state-created danger doctrine unmakes both choices, and every analogue in the other amici States. It recharacterizes the same negligent conduct as a federal constitutional deprivation and channels it into § 1983 civil actions, where state officer immunity statutes cannot apply. The result is that a claim Pennsylvania's Legislature barred and Iowa's Legislature limited proceeds anyway, in federal court, under a right that no Legislature wrote and no ratifying generation recognized.

The Supreme Court has warned against exactly that outcome. Substantive due process must not become "a font of tort law to be

superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701 (1976). The Due Process Clause "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Collins*, 503 U.S. at 128 (quoting *Daniels v. Williams*, 474 U.S. 327, 332 (1986)). And "the Due Process Clause does not impose an independent federal obligation upon municipalities to provide certain minimal levels of safety and security." *Id.* at 129. *Kneipp* encompasses all three downfalls that those cases warn against.

There is a practical cost to this judicially created doctrine too, and amici States bear it. The doctrine's liability turns on whether the officer's intervention left the citizen worse off than if he had never come. An officer who drives past a stranded, intoxicated pedestrian faces no exposure at all. An officer who stops, assesses, and arrests an impaired driver has, on Appellant's theory, affirmatively created a danger to the passenger and must now guarantee her safety on pain of personal liability. The doctrine thus imposes liability for conscientiousness and punishes good officers.

Not only that, but the state-created-danger doctrine can put officers in an impossible situation with respect to encounters with people who refuse help. In those situations, like arresting a drunk driver with a drunk passenger, the officers have no basis to compel

an adult passenger to accept help. If a passenger refuses help and is not believed to have committed a crime, the officers may not take an adult into custody, not even to provide protection. *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978) ("Clearly, an arrest without probable cause is a constitutional violation actionable under § 1983."). Even officers' authority to detain a person who may be a danger to themselves is very narrow. *See*, *e.g.*, 50 P.S. § 7301(a).

That is all to say that ratcheting up officers' prospective liability for state-created-danger claims has the potential to put officers in a very narrow bind where they must ensure safety without authority to demand compliance with their directives.

## IV. Overruling *Kneipp* Leaves Every Genuine Constitutional Claim Intact.

Appellant may say that abrogating the state-created danger doctrine incentivizes bad behavior by police. It does not. The doctrine's disappearance will not affect claims that the Constitution legitimately secures.

Overruling *Kneipp* does not disturb *DeShaney*'s custodial rule, under which the State that incarcerates or institutionalizes a person assumes a duty to see to his basic needs, 489 U.S. at 199–200. Nor will it affect claims for excessive force, unreasonable seizure, or unlawful arrest under the Fourth Amendment. Nor will it affect the availability of claims that a state actor affirmatively

inflicted harm, *i.e.*, the officer who pushes a citizen into traffic can be held accountable without *Kneipp*. Nor will eliminating *Kneipp* eliminate any state-law remedy that a state legislature adopted. Wrongful-death, negligence, and dram-shop claims remain available on whatever terms each State's Legislature has set. Appellant pleaded three such claims here, and the district court dismissed them without prejudice. *Nahas*, 2025 WL 2021919, at *5.

Amici do not minimize what happened to Faye McCoy. Her death was a tragedy, and nothing in this brief suggests otherwise. But the Supreme Court has told courts what to do with that impulse: "before yielding to that impulse, it is well to remember once again that the harm was inflicted not by the State . . . but by" a private party. *DeShaney*, 489 U.S. at 203. The remedy for that harm lies in Pennsylvania's courts, under Pennsylvania's law, on terms set by Pennsylvania's Legislature.

One final matter of procedure. *Kneipp* cannot be reconciled with binding Supreme Court precedent and thus, given the briefing here, this Court should recognize that decision as having been abrogated by the Supreme Court. But if this Court, following briefing, believes en banc is necessary to inter *Kneipp*, it should take that step.

## CONCLUSION

The Court should hold that no liberty interest in being free from "state-created danger" is deeply rooted in this Nation's history and tradition, recognize that *Kneipp v. Tedder* is out of step with Supreme Court precedent, and affirm.

Respectfully submitted,


DAVID W. SUNDAY, JR.
Attorney General of Pennsylvania

/s/ Daniel B. Mullen
DANIEL B. MULLEN
Chief Deputy Attorney General
Chief, Appellate Litigation Section
1251 Waterfront Place
Pittsburgh, PA 15222
(717) 562-4192

BRENNA BIRD
Attorney General of Iowa

*/s/ Eric H. Wessan*
ERIC H. WESSAN
*Solicitor General*
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

ATTORNEYS FOR
AMICUS PENNSYLVANIA AND
IOWA ATTORNEYS GENERAL

## ADDITIONAL COUNSEL

STEVE MARSHALL
Attorney General of Alabama

CORI MILLS
Acting Attorney General of Alaska

TIM GRIFFIN
Attorney General of Arkansas

JAMES UTHMEIER
Attorney General of Florida

CHRIS CARR
Attorney General of Georgia

RAUL LABRADOR
Attorney General of Idaho

THEODORE E. ROKITA
Attorney General of Indiana

KRIS W. KOBACH
Attorney General of Kansas

LIZ MURRILL
Attorney General of Louisiana

CATHERINE HANAWAY
Attorney General of Missouri

AUSTIN KNUDSEN
Attorney General of Montana

MICHAEL T. HILGERS
Attorney General of Nebraska

DREW WRIGLEY
Attorney General of North Dakota

ANDY WILSON
Attorney General of Ohio

GENTNER DRUMMOND
Attorney General of Oklahoma

ALAN WILSON
Attorney General of South Carolina

MARTY JACKLEY
Attorney General of South Dakota

JONATHAN SKRMETTI
Attorney General of Tennessee

DEREK BROWN
Attorney General of Utah

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) document contains 3,981 words. It also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ *Daniel B. Mullen*
DANIEL B. MULLEN
Chief Deputy Attorney General

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the first day of October, 2026, this brief was electronically filed with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

/s/ *Daniel B. Mullen*
DANIEL B. MULLEN
Chief Deputy Attorney General